7/7/2017 11:52 AM
Chris Daniel - District Clerk Harris County
Envelope No. 18052895
By: Nelson Cuero
Filed: 7/7/2017 11:52 AM

NO. _____

| | | |
|---|---|---|
| **LARRY MOORE, JR.** | § | **IN THE DISTRICT COURT** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | **_____ JUDICIAL** |
| | § | **DISTRICT** |
| | § | |
| HOUSTON POLICE DEPARTMENT, | § | |
| CITY OF HOUSTON and individually, | § | |
| KEVIN HUBENAK | § | |
| | § | |
| | § | |
| **Defendants.** | § | **OF HARRIS COUNTY, TEXAS** |

## PLAINTIFF'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES Plaintiff, LARRY MOORE, hereinafter referred to as ("Plaintiff"), and by and through their attorney, Andre D. Evans of Andre Evans & Associates, PLLC., files this Original Complaint complaining of Defendants The City of Houston, Houston Police Department ("HPD") and Officer KEVIN HUBENAK, hereinafter collectively referred to as ("Defendants") and for causes of action, would respectfully show unto the Court and jury the following:

> **"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.[1]"**

### I.    PRELIMINARY STATEMENT

1.    Early in the afternoon of July 7, 2015, Larry Moore, was violently beaten, harassed, taunted, wrongfully arrested and denied medical attention. Houston Police Department Officer HUBENAK used excessive force, and his fellow Houston Police Officers acted in concert while violating the constitutionally protected rights of Mr. Moore.

---

[1] 42 U.S.C. § 1983 (emphasis added).

## II.    PARTIES

2.    Plaintiff Larry Moore, is an individual who resides in HPD County, Texas.

3.    Defendant CITY OF HOUSTON is a Governmental Entity and political subdivision of the State of Texas.  At all times material to the claims set forth herein, Mayor Anise Parker (hereinafter "Mayor Parker") was the top elected official of the City of Houston and its top policymaker for the City of Houston, along with members of the City Council.

4.    Defendant HOUSTON POLICE DEPARTMENT is a Governmental Agency, was and is and agency, department and/or subdivision of the City of Houston organized and existing pursuant to the laws of the State of Texas, engaged in the hiring, training and supervision of law enforcement/corrections officers.

5.    Defendant Officer KEVIN HUBENAK, sued in their individual capacities, at all times acted under color of law, and was employed by Defendant Houston Police Department.

6.    Defendants John and Jane Doe, sued in their individual capacities, at all times acted under color of law, and were employed by Defendant Houston Police Department and City of Houston.

7.    One or more of the individual Defendants had supervisory responsibilities with respect to individual Defendants, and with respect to operations of the Houston Police Department.

8.    At all times material to the claims set forth herein, Charles A. McClelland, Jr. (hereinafter "Chief McClelland") was the director of the Houston Police Department and was responsible for the oversight of the Houston Police Department, the development, promulgation, and implementation of policies, procedures and standards for the Houston Police Department. Specifically, McClelland is the chief policymaker for the Houston Police Department and was directly responsible for the operations of the Houston Police Department and all of its officers,

including those named herein.

9.     The Houston Police Department is responsible for, among other things, development, promulgation, and implementation of policies and procedures and standards for the Houston Police Department and more specifically policies, procedures and standards relating to the use of force, arrest, internal affairs investigations, discipline and overall conduct of officers working at the Houston Police Department.

10.     The City of Houston funds and operates the Houston Police Department, which, along with the Houston City Controller's Office, is responsible for the implementation of the police department's budget, policies, procedures, practices and customs, as well as the acts and omissions, challenged by this suit.  The Houston Police Department is also responsible for preventative investigative, and enforcement services for all citizens of the City of Houston.

11.     Defendant City of Houston is the employer of individual Defendant KEVIN HUBENAK, and other unknown employees ("John and Jane Doe") defendants and is responsible for the acts and/or omissions of same that were performed in the course and scope of their employment for reasons set forth herein.

### III.     JURISDICTION, VENUE, AND BASIS FOR RELIEF

12.     Jurisdiction exists under 28 U.S.C. §§ 1331 & 1343 since Plaintiff is suing for relief under 42 U.S.C. § 1983.  This Court has jurisdiction over Plaintiff's other claims under principles of pendent, ancillary and supplemental jurisdiction under 28 U.S.C. § 1367.

13.     Venue is appropriate in this District, since the events complained of occurred in this District and this Division pursuant to 24 U.S.C. § 1391.

14.     For violations of his federal constitutional rights, Plaintiff is entitled to the requested relief against all Defendants and their employees because at all relevant times herein, their

conduct was subject to 42 U.S.C. §§ 1983, 1985, 1986 and 1988.

### IV.   ACTS OF AGENTS

15.   Whenever in this petition it is alleged that Defendant entities performed any act or thing, it is meant that the Houston Police Department and the City of Houston through their agents, servants, employees, or representatives performed such act or thing and at the time such act or thing was done, it was done with the full authorization or ratification of the Defendants and was done in the normal and routine course and scope of employment with the Houston Police Department or the City of Houston as the facts may show.

### V.   FACTS

16.   On or about July 7, 2015, Larry Moore was driving his vehicle, travelling westbound in the 5600 block of Mykawa Rd.  In the car with him was passenger Michael Brooks, who was riding in the front passenger seat.

17.   Officer KEVIN HUBENAK (employee no. 133964), and his partner, who's name and title is unknown, were assigned to a Crime Reduction Task Force.  At approximately 1940 hours, Officer KEVIN HUBENAK initiated a traffic stop of Larry Moore's vehicle, purportedly for a defective tail light.  Mr. Moore complied, pulling his vehicle over near the entrance of the Fiesta Mart located at 5600 Mykawa Rd, and Officer HUBENAK parked his patrol car directly behind Mr. Moore's vehicle.

18.   Officer HUBENAK approached the driver side of the vehicle while his partner approached the passenger side.

19.   Officer HUBENAK instructed Mr. Moore to step out of the vehicle while Officer HUBENAK's partner instructed Michael Brooks to step out of the vehicle.  Mr. Moore and Mr. Brooks complied.

20.     While Mr. Moore was talking with Officer HUBENAK, an argument was overheard between Mr. Brooks and officer HUBENAK's partner.

21.     Shortly thereafter, Mr. Brooks ran from officer HUBENAK's partner but was subsequently arrested after a foot pursuit.

### HPD OFFICERS VIOLENTLY ASSAULTED MR. MOORE

22.     After Mr. Brooks ran from the scene, officer HUBENAK suddenly and violently body slammed Mr. Moore on his neck, head and face, causing him to go into a brief state of shock, as well as a severe laceration and extreme swelling.

23.     Once Mr. Moore regained consciousness, he felt that he had a handcuff on one of his wrists and observed officer HUBENAK punching him in the face and body.  Officer HUBENAK then began kicking Mr. Moore.

24.     Officer HUBENAK stopped assaulting Mr. Moore only when witnesses who were walking to and from Fiesta Mart started yelling for him to stop beating Mr. Moore.

25.     After Officer HUBENAK fully handcuffed Mr. Moore, he placed his boot on Mr. Moore head, so forcefully that it left a dirt boot print in Mr. Moore's hair.  The boot print stayed in Mr. Moore's hair until a member of Ben Taub Hospital's staff removed it.  After Officer HUBENAK saw the injuries to Plaintiff's face, he enlisted a security guard to detain Plaintiff in the same manner in which he was detaining him, with a boot.

26.     At the time of the assault, Mr. Moore was not attempting to evade or resist arrest, or otherwise harm any person.

27.     Mr. Moore sustained a blood clot in his face and Mr. Moore's face still has not returned to its original condition.  Below are photographs of Mr. Moore taken hours after his arrest.



## HPD OFFICERS CONFISCATED MR. MOORE'S CELL PHONE AND TOWED HIS VEHICLE

28.    When Mr. Moore was handcuffed and before he was placed into the backseat of the patrol car, his cell phone was in his pants pocket.

29.    Mr. Moore's cell phone was removed from his pocket during a search of his person.

30.    When Mr. Moore, who was not arrested and was released from custody, asked the HPD officers on the scene to return his phone back into his pocket, Officer HUBENAK said "no" and threw his phone inside of Mr. Moore's vehicle, which he knew would be subsequently towed and kept at a storage lot.

31.    Mr. Moore plead with them to give him his phone so that he could contact his family upon release.  The HPD officers displayed an insulting indifference and refused to return Mr. Moore's cell phone.

32.    Because the unknown HPD Officers refused to return Mr. Moore's phone to its original location, Mr. Moore was unable to use or access his phone for several days, although he was

released.  Although Mr. Moore was eventually released from police custody, his vehicle was not released to him.

## MR. MOORE WAS RIDICULED AND DENIED IMMEDIATE MEDICAL TREATMENT

33.    After the assault, Mr. Moore was placed into the back of an HPD patrol car.  Mr. Moore was left in the patrol car for approximately two (2) hours.

34.    To exacerbate the physical pain Mr. Moore was experiencing, he was forced to listen as other HPD officers on the scene praised officer HUBENAK for the severity of the injuries he caused Mr. Moore.  While Mr. Moore was in the backseat of the patrol car, he heard officers laughing and joking about how hideous his face looked.  The unknown HPD Officers congratulated officer HUBENAK as if he were in a competition to see who could inflict the most harm.

35.    Despite Mr. Moore's several requests for an ambulance, no one called an ambulance to the scene to assess and treat Mr. Moore's injuries.  Mr. Moore's injuries were:

        a. patent;

        b. visible;

        c. in need of medical attention; and

        d. severe.

36.    Instead, Mr. Moore was transported to HPD Central Jail, where he was refused admittance due to his "blunt facial trauma."

37.    The medical examiner at the jail instructed the transporting officer to take Mr. Moore to Ben Taub Hospital for immediate treatment.

38.    The transporting officer was instructed not to arrest Mr. Moore by:

        a. an HPD supervisor; or

b. an HPD Officer.

39.     Mr. Moore was transported to Ben Taub Hospital in a HPD patrol car driven by another HPD officer who was instructed by an HPD sergeant to transport him to the hospital in the patrol car.

40.     Although Mr. Moore was not under arrest, Mr. Moore was transported to Ben Taub Hospital in handcuffs.  Mr. Moore did not request to be transported to Ben Taub Hospital.

## OFFICER HUBENAK REFUSED TO ANSWER QUESTIONS OR GO TO BEN TAUB DESPITE THE HOSPITAL'S REQUEST

41.     After being transported to Ben Taub Hospital, Mr. Moore was treated by Dr. J. Wuhantu. While treating Mr. Moore, Dr. Wuhantu had several questions regarding the cause of Mr. Moore's injuries.  Dr. Wuhantu asked the transporting officer what happened and the transporting officer stated that he did not know and that Mr. Moore already had the injuries when he arrived on the scene.  Dr. Wuhantu later asked if Mr. Moore was under arrest and the transporting officer replied "no."  Dr. Wuhantu then asked then "why is he in handcuffs" and instructed the officer to remove the handcuffs.

42.     Dr. Wuhantu then asked the transporting officer to contact the officer responsible for Mr. Moore's injuries and tell him to come to the hospital to answer questions about Mr. Moore's injuries.  Officer HUBENAK refused to report to the hospital or answer any questions about how Mr. Moore received his injuries.

## IN ATTEMPT TO PROTECT THE DEPARTMENT HPD OFFICERS LIED TO JUSTIFY THEIR MISCONDUCT

43.     Officer HUBENAK knew that he wrongfully used excessive force against an innocent man and in an attempt to justify his actions, stated that he was trying to "protect" Mr. Moore.

44.     At no time did Officer HUBENAK allege that Mr. Moore ever attempted to evade or

resist arrest.

45.     Officer HUBENAK and another unknown HPD officer, the same officer who transported Mr. Moore to the hospital, engaged in a conspiracy to cover up Officer HUBENAK's use of excessive and unreasonable force.

### MR. MOORE WAS LATER CHARGED FOR POSSESSION OF MARIJUANA

46.     Mr. Moore was later charged and arrested for violating Texas Penal Code § 481.121, "Possession of Marijuana."  A violation under this statute is a state jail felony.

47.     Mr. Moore bonded out of custody before his arrest, and subsequently hired a criminal defense attorney to assert his innocence, both causing Mr. Moore financial hardship.

48.     Mr. Moore has consistently maintained his innocence and Mr. Brooks consistently admitted that the marijuana found in the truck belonged to him and that Mr. Moore was not aware of the drugs.

49.     Officer HUBENAK lied and stated that he found the drugs in the center console, although according to Michael Brooks, the owner of the drugs, they were hidden in the back of the truck underneath the passenger seat.

### SUPERVISORS WITHIN HPD WERE AWARE OF THE FABRICATED CHARGES

50.     At the scene of the arrest, there was at least one HPD sergeant present. The HPD sergeant either assisted in the false arrest and imprisonment of Mr. Moore, or failed to prevent his/her subordinate officers from doing so.

51.     Despite the drug being found in the immediate possession of the passenger seat, Mr. Brooks admitting to ownership of the marijuana and informing the arresting officers the Mr. Moore was not aware of the drugs, HPD failed to drop the charges against Mr. Moore.

52.    While at the City of Houston Jail, Mr. Moore made HPD sergeants, as well as other City of Houston employees, were made aware of the excessive force used against him.  However, no actions were taken to investigate the allegations made by Mr. Moore, specifically, no City of Houston employees instructed Mr. Moore on how to file a formal complaint.  Mr. Moore was under the impression that he filed a formal complaint when he informed an HPD sergeant of the actions of an HPD officer.

53.    Therefore, the deprivation of Mr. Moore's federal rights was proximately caused by the customs, policies and practices of the Houston Police Department, or alternatively, were a moving force behind Plaintiff's injury.  Undoubtedly, it was the policies, practices and customs of the Houston Police Department that prolonged the deprivation of Mr. Moore's federal rights.

## MR. MOORE SUFFERED SIGNIFICANT PAIN AND ANGUISH

54.    As a direct and proximate result of the brutal assault, denial of medical treatment and conversion of personal property, Mr. Moore suffered significant pain and mental anguish.  In addition, the pain in Mr. Moore's face is chronic and excruciating.

55.    The harm suffered by Mr. Moore is exacerbated by the fact that the fabricated, yet heinous felony charge on his criminal record is available to the public.  HPD's morally destitute and malevolent action does not simply exacerbate Mr. Moore's pain and anguish, it also prolongs it.  Mr. Moore, who considers himself a man of pride and integrity, has to live knowing that a felony charge, which paints him as a criminal, and serves as a constant reminder of one of his most traumatizing and humiliating moments is memorialized in the public domain due to the actions, policies, customs and practice of the Houston Police Department.  Mr. Moore states that he has difficulty sleeping, recurring nightmares, migraines, hearing loss and sporadic feelings of

rage due to the treatment he endured while being arrested by HPD officers.  Mr. Moore also lost his job due to his injuries and has been denied employment due to his pending felony charge.

## VI.    HARMS

56.    The actions and inactions by individual Defendants, as well as the conditions of employment and policies, practices, and customs of Houston Police Department, actually and proximately caused the following injuries and damages:

   a.    Violations of his rights under the Fourth, Eighth, and Fourteenth Amendments to the Constitution;

   b.    Loss of physical liberty;

   c.    Physical injuries, pain and suffering, extreme fear, emotional trauma;

   d.    Permanent facial disfigurement;

   e.    Humiliation, loss of employment, loss of employment opportunities, embarrassment and injury to reputation.

57.    The physical, psychological, and economical consequences of Defendants' actions continue to date, and upon information and belief, will continue into the future.

58.    Upon information and belief, HUBENAK's vehicle or person was equipped with a dash or body camera, which would have captured the entirety of the assault.

59.    At the time of the assault, HUBENAK was in his HPD uniform and driving an HPD patrol vehicle.  It is clear that Officer HUBENAK, while acting under color of his authority as a peace officer, wrongfully body slammed, punched, kicked and wrongfully charged Mr. Moore, causing him to sustain severe and permanent injuries.

**VII.   COUNT 1: THE RIGHT TO BE FREE FROM EXCESSIVE FORCE PURSUANT TO 42 U.S.C. § 1983 AND THE 4TH AMENDMENTS OF THE U.S. CONSTITUTION (OBJECTIVE STANDARD)**

60.     Plaintiff re-alleges all of the allegations in the previous paragraphs, as though fully set forth herein.

61.     At all times relevant hereto, the DEFENDANT HPD'S OFFICERS were acting under color of state law, ordinance and/or regulation, statutes, custom and usages of the HPD. The DEFENDANT HPD'S OFFICERS were also acting in concert with one another.

62.     DEFENDANT HPD'S OFFICERS acted under color of state law to deprive LARRY MOORE of certain constitutionally protected rights under the Fourth Amendment to the Constitution of the United States, including, but not limited to (a) the right to be free from unreasonable searches and seizures, and (b) the right to be free from excessive use of force by persons acting under color of state law.

63.     Carefully balancing of the nature and quality of the intrusion on LARRY MOORE's 4th Am. Interest against the countervailing governmental interest at stake, DEFENDANT HPD and its HPD OFFICERS, namely Officer K. Hubenak, used excessive force against LARRY MOORE, pursuant to Graham v. Connor, 490 U.S. 386, 395-96 (1989) – to wit:

> a. when Officer K. Hubenak body slammed, punched and placed his boot on the face and head of LARRY MOORE for a period up to five minutes in violation of his 4th/14th Amendment Right to be Free from Excessive Force; and
>
> b. enlisting a civilian security guard and allowing him to restrain LARRY MOORE by placing his boot on him.

64.     DEFENDANT HPD and its OFFICERS' use of force was objectively unreasonable in light of the totality of the circumstances confronting the Officers, without regard to the Officers' underlying intent or motivation[2]. *Graham* at 397. That is, when the excessive force was applied,

---

[2] An Officer's intent or subjective motivations may be considered by a fact-finder when evaluating the credibility of his testimony. Graham at 399.

there was no crime or serious crime at issue, LARRY MOORE did not pose an immediate threat to the safety of the Officers or others, and did not actively or passively resist custody/detention/arrest.  And, the totality of the circumstances surrounding the above-described excessive force and that gave rise to LARRY MOORE's legal and constitutional resistance included the unjustifiable and unreasonable cussing, threatening, detaining, cuffing, arresting, kicking, stepping on the face of LARRY MOORE, suffocating, and assisting in the injection of LARRY MOORE by the DEFENDANT HPD'S OFFICERS – including Officer K. Hubenak.

65.    DEFENDANT HPD and its HPD OFFICER – Officer K. HUBENAK used deadly force when he used his feet and a body-slam as a means of use of force when he had no probable cause to believe that LARRY MOORE posed a significant threat of death or serious physical injury to the Officer or others[3].

66.    LARRY MOORE suffered "(1) an injury," "(2) which resulted from the use of force that was clearly excessive to the need," and "(3) the excessiveness of which was objectively unreasonable" when Defendant Officer K. Hubenak used excessive force against LARRY MOORE, as described above.

67.    HPD implicitly or explicitly adopted and implemented careless and reckless policies, customs, or practices. These included, among other things, allowing DEFENDANT HPD and its HPD OFFICERS, namely Officer K. Hubenak, to unconstitutionally and excessively use of force in violation of the United States Constitution.

---

[3] Tennessee v. Garner, 471 U.S. 1, 3 (1985) (holding that "Where the suspect poses no immediate threat to the Officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so;" and "that the use of deadly force to prevent the escape of all felony suspects, whatever the circumstances, is constitutionally unreasonable.); see also, Brockington v. Boykins, 637 F.3d 503 (4th Cir. 2011) (holding that it is unreasonable for an Officer to continue shooting someone who is already incapacitated – i.e. an Officer may not continue to use deadly force once the threat posed by a suspect has been eliminated); Waterman v. Batton, 393 F.3d 471 (4th Cir. 2005) (holding that once the justification for the initial use of force has been eliminated, a subsequent use of force is improper).

68. HPD failure to adequately train and supervise DEFENDANT HPD'S OFFICERS amounted to deliberate indifference to LARRY MOORE's rights to be free from excessive force and unreasonable seizures under the Fourth and Fourteenth Amendments to the United States Constitution.

69. HPD's ratification and/or concealment of DEFENDANT HPD'S OFFICERS' actions or omissions amounted to deliberate indifference to LARRY MOORE's rights to be free from excessive force and unreasonable seizures under the Fourth and Fourteenth Amendments to the United States Constitution.

70. What's more, HPD'S continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees establishes the conscious disregard for the consequences of their action—the "deliberate indifference"—necessary to trigger municipal liability. Bd. of the County Comm'Rs v. Brown, 520 U.S. 397, 407 (U.S. 1997).

71. DEFENDANTS' conduct, actions, and/or inactions were the moving force, directly caused, proximately caused, and/or were a substantial factor in causing the Constitutionally-violative injuries sustained by LARRY MOORE and his damages, as set forth more fully below.

72. Plaintiff seek unliquidated damages within the jurisdictional limitations of this court.

### VIII. COUNT 2: THE RIGHT TO BE FREE FROM EXCESSIVE FORCE PURSUANT TO 42 U.S.C. § 1983 AND THE 14TH AMENDMENTS OF THE U.S. CONSTITUTION (SUBJECTIVE STANDARD)

73. Plaintiff re-alleges all of the allegations in the previous paragraphs, as though fully set forth herein.

74.     Once an individual is taken into custody, he is considered a pre-trial detainee (also referred to in cases as an "arrestee")[4]. On the afternoon of July 7, 2015, LARRY MOORE was taken into custody.

75.     Defendant HPD and its HPD OFFICERS, namely Officer K. Hubenak, "inflicted unnecessary and wanton pain and suffering[5]" – to wit:

a. when Officer K. Hubenak body slammed, punched, kicked and placed his boot over the face, nose, and mouth of LARRY MOORE for a period up to three minutes in violation of his 4th/14th Amendment Right to be Free from Excessive Force; and

b. enlisting a civilian security guard and allowing him to restrain LARRY MOORE by placing his boot on him.

76.     Defendant HPD and its HPD OFFICERS, namely Officer K. Hubenak's, conduct was a Constitutionally-violative "infliction of unnecessary and wanton pain and suffering" in light of the following factors:

a. the need for the application of force (use of feet and a body-slam as a means of use of force as described

above) was zero;

b. the relationship between the need (protection from harm) and the amount of force that was used (use of a body-slam, punches and feet as a means of use of force as described above) was disproportionate as to be excessive,

c. the extent of injury inflicted was serious bodily harm, and

---

[4] The Fourth Amendment no longer applies once the individual is subject to pre-trial detainment. Instead, a claim of excessive force by a pre-trial detainee is governed by the Due Process Clause of the Fourteenth Amendment. Orem v. Rephann, 523 F.3d 442, 445-46 (4th Cir. 2008); Riley v. Dorton, 115 F.3d 1159 (4th Cir. 1997) (en banc)). Under the Due Process Clause, a pretrial detainee has the right to be free from excessive force that amounts to punishment. Bell v. Wolfish, 441 U.S. 520, 534-37 (1979); Graham v. Connor, 490 U.S. 386, 395 n. 10 (1989). When a detained individual is punished prior to an adjudication of guilt, he is deprived of his liberty without due process of law and has a substantive due process claim. Johnson v. Glick, 481 F.2d 1028, 1032 (2nd Cir. 1973).
[5] Taylor v. McDuffie, 155 F.3d 479, 483 (4th Cir. 1998).

d. the force applied was in bad faith or was maliciously and sadistically applied for the very purpose of causing harm.[6]"

77.     What's more, DEFENDANT HPD and its HPD OFFICERS, namely Officer K. Hubenak's, conduct exhibited "Deliberate Indifference[7]" – Defendants actually knew of and ignored a substantial risk of injury to LARRY MOORE.

78.     What's more, DEFENDANT HPD and its HPD OFFICERS, namely Officer K. Hubenak, subjectively recognized a substantial risk of harm.

79.     What's more, DEFENDANT HPD and its HPD OFFICERS, namely Officer K. Hubenak, subjectively recognized that their actions were inappropriate in light of that risk.

80.     What's more, DEFENDANT HPD and its HPD OFFICERS, namely Officer K. Hubenak, had actual knowledge of the risk of injury – the risk was so obvious that a fact-finder could conclude that "the Officer did know of it because he could not have failed to know of it." Id.; see also *Farmer v. Brennan*. 511 U.S. 825, 842 (1994).

81.     What's more, DEFENDANT HPD and its HPD OFFICERS, namely Officer K. Hubenak, had actual knowledge of the inappropriateness of his response – it was "so patently inadequate" as to justify an inference that the Officer actually recognized that his response was inappropriate under the circumstances.

82.     LARRY MOORE suffered "(1) an injury," "(2) which resulted from the use of force that was clearly excessive to the need," and "(3) the excessiveness of which was objectively

---

[6] Johnson, 481 F.2d at 1033 (quoted with approval in Orem, 523 F.3d at 446).

[7] The rights of a pre-trial detainee under the Due Process Clause are at least as great as the rights of a convicted prisoner under the Eighth Amendment. City of Revere v. Massachusetts General Hosp., 463 U.S. 244 (1983) (holding that the Due Process Clause requires government to provide medical care to individuals who have been injured while being apprehended by the police). An Officer's deliberate indifference to a pre-trial detainee's serious medical needs or deliberate indifference to the need to protect a pre-trial detainee from a substantial risk of harm are actionable under the Due Process Clause. Young v. City of Mount Ranier, 238 F.3d 567, 575 (4th Cir. 2001). The deliberate indifference of governmental officials to a pre-trial detainee's serious medical needs or substantial risk of harm meets the shock the conscience standard for a substantive due process violation. Id.

unreasonable" when Defendant Officer K. Hubenak used excessive force against LARRY MOORE, as described above.

83.    HPD implicitly or explicitly adopted and implemented careless and reckless policies, customs, or practices. These included, among other things, allowing DEFENDANT HPD and its HPD OFFICERS, namely Officer K. Hubenak, to unconstitutionally and excessively use their feet, punching and a body-slam as a means of use of force in violation of the United States Constitution.

84.    HPD failure to adequately train and supervise DEFENDANT HPD'S OFFICERS amounted to deliberate indifference to LARRY MOORE's rights to be free from excessive force and unreasonable seizures under the Fourth and Fourteenth Amendments to the United States Constitution.

85.    HPD ratification and/or concealment of DEFENDANT HPD'S OFFICERS' actions or omissions amounted to deliberate indifference to LARRY MOORE's rights to be free from excessive force and unreasonable seizures under the Fourth and Fourteenth Amendments to the United States Constitution.

86.    What's more, HPD'S continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees establishes the conscious disregard for the consequences of their action—the "deliberate indifference"—necessary to trigger municipal liability. Bd. of the County Comm'rs v. Brown, 520 U.S. 397, 407 (U.S. 1997).

87.    DEFENDANTS' conduct, actions, and/or inactions were the moving force, directly caused, proximately caused, and/or were a substantial factor in causing the Constitutionally-violative injuries sustained by LARRY MOORE and his damages, as set forth more fully below.

88.    Plaintiff seeks unliquidated damages within the jurisdictional limitations of this court.

### IX.        COUNT 3: 42 U.S.C. § 1983 AND 14TH AMENDMENT OF THE U.S. CONSTITUTION SUBSTANTIVE DUE PROCESS CLAIM

89.     Plaintiff re-alleges all of the allegations in the previous paragraphs, as though fully set forth herein.

90.     DEFENDANT HPD and its HPD OFFICERS, namely Officer K. HUBENAK, used excessive force against LARRY MOORE – to wit:

> a. when Officer K. Hubenak body-slammed, punched, kicked and placed his boot over the face or head of LARRY MOORE for a period up to five minutes in violation of his 4th/14th Amendment Right to be Free from Excessive Force; and

> b. when Officer HUBENAK instructed a private security guard to detain Plaintiff by placing his boot on Plaintiff.

91.     DEFENDANT HPD and its HPD OFFICERS, namely Officer K. Hubenak's, conduct was "deliberate decision to deprive a person of life, liberty, or property."

92.     DEFENDANT HPD and its HPD OFFICERS, namely Officer K. Hubenak's, action "can properly be characterized as conscience shocking, in a constitutional sense[8]" and/or was recklessness, gross negligence, or deliberate indifference to the rights of LARRY MOORE.

---

[30] The Due Process Clause in the Fourteenth Amendment states, "[N]or shall any State deprive any person of life, liberty, or property, without due process of law…" U.S. Const. Amend. XIV, § 1. Due process also has a substantive component which prohibits certain governmental actions regardless of the fairness of the procedures used to implement them. Daniels v. Williams, 474 U.S. 327, 331 (1986).

93.     LARRY MOORE suffered "(1) an injury," "(2) which resulted from the use of force that was clearly excessive to the need," and "(3) the excessiveness of which was objectively

---

[8] Conduct that "shocks the conscience" is the type that violates the "decencies of civilized conduct." Rochin v. California, 342 U.S. 165, 172-73 (1952). It is also conduct that is so brutal and offensive that it does not comport with "traditional ideas of fair play and decency." Whitley v. Albers, 475 U.S. 312, 327 (1986). The "shock the conscience" standard is found "at the ends of the tort law's spectrum of culpability." County of Sacramento v. Lewis, 523 U.S. 833, 848 (1998). As a result, "conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to give rise to the conscience-shocking level." Lewis, 523 U.S. at 849.

unreasonable" when Defendant Officer K. Hubenak used excessive force against LARRY MOORE, as described above.

94. HPD implicitly or explicitly adopted and implemented careless and reckless policies, customs, or practices. These included, among other things, allowing DEFENDANT HPD and its HPD OFFICERS, namely Officer K. Hubenak, to unconstitutionally and excessively use their feet, punching and a body-slam as a means of use of force in violation of the United States Constitution.

95. HPD failure to adequately train and supervise DEFENDANT HPD'S OFFICERS amounted to deliberate indifference to LARRY MOORE's rights to be free from excessive force and unreasonable seizures under the Fourth and Fourteenth Amendments to the United States Constitution.

96. HPD ratification and/or concealment of DEFENDANT HPD'S OFFICERS' actions or omissions amounted to deliberate indifference to LARRY MOORE's rights to be free from excessive force and unreasonable seizures under the Fourth and Fourteenth Amendments to the United States Constitution.

97. What's more, HPD'S continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees establishes the conscious disregard for the consequences of their action—the "deliberate indifference"—necessary to trigger municipal liability. Bd. of the County Comm'rs v. Brown, 520 U.S. 397, 407 (U.S. 1997).

98. DEFENDANTS' conduct, actions, and/or inactions were the moving force, directly caused, proximately caused, and/or were a substantial factor in causing the Constitutionally-violative injuries sustained by LARRY MOORE and his damages, as set forth more fully below.

99. Plaintiff seeks unliquidated damages within the jurisdictional limitations of this court.

## XVI.   COUNT 4: OFFICIAL POLICY CLAIM[9] PURSUANT TO 42 U.S.C. § 1983 AND THE 4th & 14TH AMENDMENT OF THE U.S. CONSTITUTION (EXCESSIVE FORCE)

100.    Plaintiff re-alleges all of the allegations in the previous paragraphs, as though fully set forth herein.

101.    HPD, by and through its policymakers as set forth above, implicitly or explicitly adopted and implemented careless and reckless policies, customs, or practices. These included, among other things, allowing DEFENDANT HPD and its HPD OFFICERS, namely Officer K. HUBENAK, to unconstitutionally and excessively use their feet, punching and a body-slam as a means of use of force in violation of the United States Constitution.

102.    That is, there is the existence of official policies or customs – namely, Necessary Force in Making Arrests, Use of Force, Policy for Deadly Force Policy, which were fairly attributable to HPD, and that proximately caused the deprivation of his rights[10].  These specific policies are and were Constitutionally-violative for failure to adequately address when the use of an Officer's feet, punching and a body-slam as a form of use of force is appropriate, if ever. Upon information and belief, HPD's "Use of Feet as Form of Use of Force" Policy is deficient and/or does not exist, should have been a written policy, and/or was never communicated and/or adequately trained.

103.    What's more, proof of the LARRY MOORE incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed and is attributed to HPD and its policymakers.

---

[9] A municipality may be held liable under 42 U.S.C. § 1983 for an official policy or custom which is the moving force behind a constitutional violation. Monell v. Dep't of Social Services of the City of New York, 436 U.S. 658 (1978).
[10] Jordan v. Jackson, 15 F.3d 333, 338 (4th Cir. 1994); Spell v. McDaniel, 824 F.2d 1380, 1386-90 (4th Cir. 1987). "[M]unicipal liability will attach only for those policies or customs having a specific deficiency or deficiencies such as to make the specific violation almost bound to happen, sooner or later, rather than merely likely to happen in the long run." Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999) (quotation and citation omitted).

104.    HPD failure to adequately train and supervise DEFENDANT HPD'S OFFICERS amounted to deliberate indifference to LARRY MOORE's rights to be free from excessive force and unreasonable seizures under the Fourth and Fourteenth Amendments to the United States Constitution.

105.    HPD's ratification and/or concealment of DEFENDANT HPD'S OFFICERS' actions or omissions amounted to deliberate indifference to LARRY MOORE's rights to be free from excessive force and unreasonable seizures under the Fourth and Fourteenth Amendments to the United States Constitution.

106.    What's more, HPD'S continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees establishes the conscious disregard for the consequences of their action—the "deliberate indifference"—necessary to trigger municipal liability. *Bd. of the County Comm'rs v. Brown*, 520 U.S. 397, 407 (U.S. 1997).

107.    DEFENDANTS' conduct, actions, and/or inactions were the moving force, directly caused, proximately caused, and/or were a substantial factor in causing the Constitutionally-violative injuries sustained by LARRY MOORE and his damages, as set forth more fully below.

108.    Plaintiff seeks unliquidated damages within the jurisdictional limitations of this court.

## X.    COUNT 5: OFFICIAL CUSTOM CLAIM[11] PURSUANT TO 42 U.S.C. § 1983 AND THE 4th & 14TH AMENDMENT OF THE U.S. CONSTITUTION (EXCESSIVE FORCE)

109.    Plaintiff re-alleges all of the allegations in the previous paragraphs, as though fully set forth herein.

110.    HPD, by and through its policymakers as set forth above, implicitly or explicitly

---

[11] A municipal custom "may be found in persistent and widespread practices of municipal officials which although not authorized by law, are so permanent and well-settled as to have the force of law." Spell, 824 F.2d at 1386 (4th Cir. 1987) (quoting Monell, 436 U.S. at 691).

adopted and implemented careless and reckless policies, customs, or practices. These included, among other things, allowing DEFENDANT HPD and its HPD OFFICERS, namely Officer K. HUBENAK, to unconstitutionally and excessively use body-slams, punching, kicking and using their feet as a means of use of force in violation of the United States Constitution.

111.    DEFENDANT HPD and its HPD OFFICERS' applied the use of their feet as a means of use of force was persistent, widespread, and/or pattern of practice at HPD that it was so permanent and well-settled that HPD had actual or constructive knowledge of its use in violation of the United States Constitution.

112.    What's more, DEFENDANT HPD and its HPD OFFICERS' use of body-slams, punching, kicking and other use of their feet as a means of use of force:

    a. was widespread without ramification or discipline;

    b. existed/allowed/encouraged because of HPD's lack of action – showing acquiescence in the inappropriate conduct;

    c. existed/allowed/encouraged because of HPD's failure to enact, enforce, implement policies and standards to the contrary;

    d. existed/allowed/encouraged because of HPD's failure to discipline its Officers;

    e. existed/allowed/encouraged because of HPD's failure to maintain, categorize, access, properly investigate, and/or accept complaints;

    f. existed/allowed/encouraged because of HPD's failure to train and/or in training;

    g. existed/allowed/encouraged because of a pattern of misconduct by prior incidents; and

    h. existed/allowed/encouraged because of a failure of record keeping.

113.    HPD failure to adequately train and supervise DEFENDANT HPD'S OFFICERS amounted to deliberate indifference to LARRY MOORE's rights to be free from excessive force and unreasonable seizures under the Fourth and Fourteenth Amendments to the United States Constitution.

114.    HPD ratification and/or concealment of DEFENDANT HPD'S OFFICERS' actions or omissions amounted to deliberate indifference to LARRY MOORE's rights to be free from excessive force and unreasonable seizures under the Fourth and Fourteenth Amendments to the United States Constitution.

115.    What's more, HPD'S continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees establishes the conscious disregard for the consequences of their action—the "deliberate indifference"—necessary to trigger municipal liability. Bd. of the County Comm'rs v. Brown, 520 U.S. 397, 407 (U.S. 1997).

116.    DEFENDANTS' conduct, actions, and/or inactions were the moving force, directly caused, proximately caused, and/or were a substantial factor in causing the Constitutionally-violative injuries sustained by LARRY MOORE and his damages, as set forth more fully below.

117.    Plaintiff seeks unliquidated damages within the jurisdictional limitations of this court.

### XI.    COUNT 6: OFFICIAL CUSTOM CLAIM PURSUANT TO 42 U.S.C. § 1983 – DEFICIENT HIRING, TRAINING, SUPERVISION, and RETENTION OF LAW ENFORCEMENT OFFICERS[12]

118.    Plaintiff re-alleges all of the allegations in the previous paragraphs, as though fully set forth herein.

---

[12] An unconstitutional custom or policy may also be shown by evidence of deficient or inadequate training, supervision, or hiring of law enforcement Officers by municipal officials. City of Canton v. HPD, 489 U.S. 378 (1989); Board of County Commissioners of Bryan County v. Brown, 520 U.S. 397 (1997); Wellington v. Daniels, 717 F.2d 932 (4th Cir. 1983).

119. Defendants are liable to Plaintiff for DEFICIENT HIRING, TRAINING, SUPERVISION, and RETENTION. HPD has a duty to properly screen and hire applicants, and their failure to do so may demonstrate a deliberate indifference to citizens' constitutional rights. See *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 117 S. Ct. 1382, 1392, 137 L. Ed. 2d 626 (1997). HPD also has a duty to train and supervise the individual Officers under their command, and their failure to do so may demonstrate a deliberate indifference to citizens' constitutional rights.  See, e.g., *Doe v. Hillsboro Indep. Sch. Dist.*, 113 F.3d 1412, 1417 (5th Cir. 1996). However, DEFENDANTS breached that duty when they improperly screened, hired, trained, supervised, and retained the DEFENDANT HPD'S OFFICERS whom, inter alia, committed the constitutional torts otherwise specified herein. Deficient employment decisions regarding hiring, training, and supervision can subject a governmental entity to §1983 liability. See *Brown*, 520 U.S. 397 (1997); *Doe v. Hillsboro Indep. Sch. Dist.*, 113 F.3d 1412, 1417 (5th Cir. 1996).

120. PLAINTIFF will show that (1) HPD's training procedures were inadequate; (2) HPD's policymakers were deliberately indifferent in adopting the training policy; and (3) the inadequate training policy directly caused the plaintiffs' injury. *Conner v. Travis County*, 209 F.3d 794, 796 (5th Cir. 2000). Second, even if HPD'S training program does not prevent constitutional violations, HPD is still liable because its makers were put on notice that a new program was called for. *Bd. of the County Comm'rs v. Brown*, 520 U.S. at 407-408. "Their continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability." Id. (citing *Canton v. HPD*, 489 U.S. 378, 390 n. 10 (1989).  Third, the U.S. Supreme Court in *Brown* also stated that it did

not foreclose the possibility that evidence of a single violation of federal rights, accompanied by a showing that a governmental entity has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, could trigger entity liability, which is the case here. Id. at 409 (citing *Canton v. HPD*, 489 U.S. at 390, and n. 10 ("It may happen that in light of the duties assigned to specific Officers or employees the need for more or different training is so obvious . . . that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need")). Here, for example, nearly every HPD officer or sergeant, failed to document or investigate Plaintiff's allegations of excessive force, provide medical treatment for LARRY MOORE or discipline/retrain the inept employees involved in Plaintiff's deprivation of rights.

121. Inter alia, HPD's lack of training on use of force and excessive force deprived LARRY MOORE of his clearly established Constitutional rights – rights secured by the US Constitution, which actions amounted to deliberate indifference and were the moving force, directly caused, proximately caused, and/or were a substantial factor in causing the deprivation of LARRY MOORE's Constitutional rights, the injuries sustained by LARRY MOORE, and PLAINTIFFS' damages.

122. Defendants' failure to supervise and their lack of training and lack of enforcement of their written audio/visual-recording policy deprived LARRY MOORE of his clearly established Constitutional rights by allowing the use of force and excessive force to go with impunity and ignorance to same, which actions amounted to deliberate indifference and were the moving force, directly caused, proximately caused, and/or were a substantial factor in causing the deprivation of LARRY MOORE's Constitutional rights, the injuries sustained by LARRY MOORE, and PLAINTIFF'S damages.

123.    What's more, HPD, a municipal actor, disregarded a known or obvious consequence of its action to not implement a proper policy on use of an Officer's feet as a form of use of force. That is, the risk that a violation of a particular constitutional or statutory right (i.e. the right against excessive force and deadly force) will follow the decision to not implement a proper policy on use of body-slams and use of an Officer's feet as a form of use of force.

124.    What's more, HPD was on actual or constructive notice of the need for training or supervision because of a pattern of similar unconstitutional acts by its Officers occurred within a relevant period of time before the incident.

125.    What's more, HPD acted in conscious disregard of the constitutional rights of its residents – namely, LARRY MOORE – by failing to train or supervise its Officers.

126.    What's more, the unconstitutional consequences of failing to train are and were so patently obvious to HPD that it is liable under § 1983 without proof of a pre-existing pattern of violations.

127.    HPD failure to adequately train and supervise DEFENDANT HPD'S OFFICERS amounted to deliberate indifference to LARRY MOORE's rights under the United States Constitution.

128.    HPD ratification and/or concealment of DEFENDANT HPD'S OFFICERS' actions or omissions amounted to deliberate indifference to LARRY MOORE's rights under the United States Constitution.

129.    DEFENDANTS' conduct, actions, and/or inactions were the moving force, directly caused, proximately caused, and/or were a substantial factor in causing the Constitutionally-violative injuries sustained by LARRY MOORE and PLAINTIFF'S damages, as set forth more fully below.

130.    Plaintiff seeks unliquidated damages within the jurisdictional limitations of this court.

### XIII.   COUNT 7: THE RIGHT TO BE FREE FROM UNREASONABLE SEARCH AND SEIZURE PURSUANT TO THE FOURTH AMENDMENT

131.    Plaintiff re-alleges all of the allegations in the previous paragraphs, as through fully set forth herein.

132.    Plaintiff pleads that Officer K. HUBENAK and other John or Jane Doe officers subjected Mr. Moore to an unreasonable seizure of his personal property in violation of the Fourth and Fourteenth Amendment and its "reasonableness" standard, as applied to the States through the Fourteenth Amendment.

133.    Mr. Moore was unlawfully displaced from his personal property by Officer Hubenak and unknown HPD officers, when Officer Hubenak removed Plaintiff's phone from his pocket and placed it in Plaintiff's vehicle without permission, against his will and in spite of Plaintiff's request for Officer Hubenak to place his phone with his personal belongings.

134.    Said actions resulted directly and only from a seizure that was clearly unnecessary under the circumstances, and solely for the purpose of maliciously and intentionally inconveniencing the Plaintiff, *and* the tortious interference with Mr. Moore's personal property was objectively unreasonable.

### XIV.   COUNT 8: 42 U.S.C. § 1983 – DELAY AND DENIAL OF MEDICAL TREATMENT AND FAILURE TO PROTECT WHILE IN CUSTODY

135.    Plaintiff re-alleges all of the allegations in the previous paragraphs, as through fully set forth herein.

136.    Under 42 U.S.C. § 1983, Plaintiff claims damages against each individual defendant who, under color of law, jointly and severally, without right or privilege, proximately and directly caused harm by delaying or denying him medical attention, in violation of the United States

Constitution.

137.    Plaintiff's injuries were so severe that he was immediately turned away from the jail because of the severity of his injuries.

138.    Individual Defendants ignored and/or denied Plaintiff's requests for an ambulance.

139.    Individual Defendants failed to call an ambulance to the scene to evaluate or treat Plaintiff's injuries.

140.    Individual Defendants were aware that Plaintiff sustained injuries due to the actions of Defendant HUBENAK.

141.    Any reasonable and prudent officer, in the same or similar circumstance would have known that Plaintiff's injuries required urgent care.

142.    Individual Defendants' denial of Plaintiff's requests for an ambulance, failure to provide Plaintiff access to medical care until several hours after he sustained his injuries, and only after being instructed to do so, clearly shows that the arresting officers acted with a deliberate indifference to Plaintiff's medical condition.

143.    Had the Individual Defendants provided Plaintiff with immediate medical attention, Plaintiff's facial disfigurement may not have been permanent.

144.    In addition to duties that the individual defendants not personally violate the Constitution, HPD officers have affirmative duties to protect in-custody detainees and/or arrestees such as LARRY MOORE at the time of his arrest.  Even if they did not attack him personally, the defendants acted intentionally, with reckless or callous indifference to constitutional rights, or otherwise with such disregard of consequences as to show deliberate indifference to the serious injuries LARRY MOORE sustained, in a manner that deprived him of his constitutional rights and perpetuated *and* exacerbated his physical and mental pain and suffering.

145.    In addition to individual defendants whose liability reflects the first-hand knowledge of LARRY MOORE being beaten, supervisory law enforcement officers should have been - and on information and belief actually were - told of both the assault and LARRY MOORE's injuries well before his transport to HPD central jail.  Such supervisory officers have, and violated, clearly established constitutional duties to protect in-custody detainees such as LARRY MOORE, including duties to discipline officers, remove them from duty, and provide training, as well as to assure care for injured arrestees.

146.    Defendants HPD and CITY OF HOUSTON are liable to Plaintiff because they failed to train, re-train, or discipline the officers responsible for his deprivation of rights, and moreover, for their failure to promulgate or implement policies that protect arrestees, and adequately apprises its employees of their duty to provide access to medical treatment.

## XV.    DAMAGES

147.    Defendants' wrongful activities, actions, and/or inactions, as detailed above, proximately caused personal injury and damage to Plaintiff, which include the following:

a. Nominal Damages.

b. Actual Damages.

c. Compensatory Damages.

d. Past and Future Mental Anguish Damages. The mental anguish Plaintiff suffered in the past and will continue to suffer in the future as a result of LARRY MOORE'S injuries.

e. Plaintiff's loss of companionship and society from the date of the incident and which will continue in the future.

f. Physical pain in the past. The physical pain and suffering LARRY MOORE suffered as a result of his injuries sustained due to the actions/omissions of Defendants.

g. The physical incapacity and impairment suffered by LARRY MOORE.

h. The mental anguish LARRY MOORE suffered as a result of his physical injuries sustained by Defendants.

i. The amount of reasonable medical expenses necessarily incurred in the past.

j. Attorney's Fees, pursuant to 42 U.S.C. §§ 1983, 1988, et seq.

k. Expert Fees, pursuant to 42 U.S.C. §§ 1983, 1988, et seq.

l. Punitive Damages, as to Defendant Officer KEVIN HUBENAK.

m. Unliquidated damages within the jurisdictional limits of this court.

n. Pre-judgment and post-judgment interest. TEX. FIN. CODE §304.001, et seq., and any other applicable law.

## XVI.  REQUESTS FOR DISCLOSURE

148.    Under Texas Rule of Civil Procedure 194, Plaintiff requests that Defendants disclose, within 50 days of the service of this request, the information or material described in Rule 194.2.

## XVII.  JURY DEMAND

149.    PLAINTIFF demands a jury trial and tender the appropriate fee with this petition.

## XVIII.  PRAYER

150.    WHEREFORE, PREMISES CONSIDERED, PLAINTIFF asks that the Court issue citation for Defendants to appear and answer, and that PLAINTIFF be awarded a judgment against Defendants for the following:

a. Nominal Damages.

b. Actual Damages.

c. Compensatory Damages.

d. Past and Future Mental Anguish Damages. The mental anguish Plaintiff suffered in the past and will continue to suffer in the future as a result of LARRY MOORE'S injuries.

e. Plaintiff's loss of companionship and society from the date of the incident and which will continue in the future.

f. Physical pain in the past. The physical pain and suffering LARRY MOORE suffered as a result of his injuries sustained due to the actions/omissions of Defendants.

g. The physical incapacity and impairment suffered by LARRY MOORE.

h. The mental anguish LARRY MOORE suffered as a result of his physical injuries sustained by Defendants.

i. The amount of reasonable medical expenses necessarily incurred in the past.

j. Attorney's Fees, pursuant to 42 U.S.C. §§ 1983, 1988, et seq.

k. Expert Fees, pursuant to 42 U.S.C. §§ 1983, 1988, et seq.

l. Punitive Damages, as to Defendant Officer K. Hubenak.

m. Unliquidated damages within the jurisdictional limits of this court.

n. Pre-judgment and post-judgment interest. TEX. FIN. CODE §304.001, et seq., and any other applicable law.

151.  PLAINTIFF pray for all other relief to which Plaintiff is justly entitled.

Respectfully submitted,

**ANDRE EVANS & ASSOCIATES, PLLC**

*Andre Evans*
ANDRE D. EVANS
TSB#: 24082970
3003 South Loop West, Suite 108
Houston, Texas 77054
281-778-8353 – facsimile
832-304-1059 – phone

andre@attorneyandreevans.com

**ATTORNEYS FOR PLAINTIFF**