United States District Court
Southern District of Texas
**ENTERED**
August 28, 2019
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LARRY MOORE, JR., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-17-2505 |
| | § | |
| CITY OF HOUSTON, et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the court[1] are Defendant City of Houston's ("City") Motion for Summary Judgment (Doc. 65), Defendant Kevin Hubenak's ("Hubenak") Motion for Summary Judgment (Doc. 66), and Defendants Kyle Kelly ("Kelly") and Glin Whitehead's ("Whitehead") Motion for Summary Judgment (Doc. 69). The court has considered the motions, the responses, the replies, Plaintiff's surreply,[2] the summary judgment evidence, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Defendant Hubenak's motion be **DENIED**, Defendants Kelly and Whitehead's motion be **GRANTED**, and Defendant City's motion be **GRANTED**.

### I. Case Background

Plaintiff filed this civil rights action against Defendant

---

[1]    This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. See Doc. 14, Ord. Dated Oct. 27, 2017.

[2]    The court granted Plaintiff's motion for leave to file a surreply by order dated May 10, 2019, and, thereby, effectively **OVERRULED** Defendants' objections to the filing of Plaintiff's surreply (Doc. 83). See Doc. 88, Ord. Dated May 10, 2019.

City and three of its police officers, alleging violations of constitutional rights that occurred during his arrest on July 7, 2015.

## A. **Factual Background**[3]

The incident that is the subject of this lawsuit has generated multiple, inconsistent accounts by those involved.[4]

### 1. **Plaintiff's Account**

On July 7, 2015, Plaintiff agreed to provide a ride to Michael Brooks ("Brooks"), who, before sitting in the vehicle, "placed his

---

[3]     None of Plaintiff's exhibit lists in his response briefs completely matches the cited and attached exhibits. At least two cited exhibits are not filed at all. The court, therefore, consulted Plaintiff's courtesy copies. While the court requires and appreciates courtesy copies, Plaintiff's courtesy copies were so disorganized and incomplete as to be essentially useless.
    In his very similar statements of fact in response to all three dispositive motions, Plaintiff provides woefully inadequate citations to record evidence in that many of the facts are not cited to any evidence and very few of those that are cited to evidence contain document names or pinpoint citations. When citing sealed exhibits, which were filed separately, Plaintiff fails to identify them as such to assist the court in locating them. Several documents are attached to more than one response but carry different exhibit numbers and/or titles, adding to the confusion.
    The court is similarly unimpressed with Defendants' citation efforts. In the three virtually identical statements of fact by Defendants, citations to evidence are missing, and no pinpoint citations are given. In two of the three motions, a range of exhibits without document names or pinpoints, are cited for multiple factual assertions.
    Rule 56 is very clear on the parties' burdens with regard to citations. Rule 56(c)(1) requires that a party cite to particular parts of the record materials for each fact relied upon as either demonstrating the absence or presence of factual disputes. If the parties fail to do so, Rule 56(c)(3) allows the court to consider only the cited evidence. The court finds that Plaintiff and Defendants all fail to comply with Rule 56(c)(1) in the ways listed above. It is not incumbent on the court to scour through disorganized and poorly cited evidence to determine whether a party has met its summary judgment burden. The parties themselves bear that burden of combing through the evidence. In reviewing the pending motions, the court, as much as was possible, held the parties to the above requirements and did not sift through numerous documents to find the existence or non-existence of any fact issue. See Fed. R. of Civ. P. Rule 56(c),(e).

[4]     The court finds that the affidavits and Houston Police Department ("HPD") incident reports capture the relevant factual background of this case.

bag in the backseat passenger side floorboard."[5]   Defendants
Hubenak and Kelly signaled for Plaintiff to pull over, and
Plaintiff complied by stopping in the parking lot of a Fiesta Mart
("Fiesta").[6]  Defendant Hubenak approached the car on the driver's
side while Defendant Kelly approached on the passenger's side.[7]

When Defendant Hubenak asked for Plaintiff's driver's license,
Plaintiff explained that he did not have it and offered another
form of identification ("ID").[8]  Defendant Hubenak returned from
his police vehicle and the conversation between the two of them
escalated.[9]  Defendant Hubenak asked Plaintiff and Defendant Kelly
asked Brooks to exit the vehicle, and the two men complied.[10]

Defendant Hubenak moved Plaintiff to the front of the vehicle
and began to search him, placing one handcuff on his wrist.[11]  An
argument developed between Brooks and Defendant Kelly, and
Defendant Hubenak instructed Plaintiff to "get down."[12]  As
Plaintiff attempted to comply, Defendant Hubenak "grabbed

---

[5]     Doc. 74-2, Ex. B to Pl.'s Resp. to Def. City's Mot. for Summ. J.,
Aff. of Plaintiff p. 1.

[6]     <u>See</u> <u>id.</u>

[7]     <u>See</u> <u>id.</u>

[8]     <u>See</u> <u>id.</u>

[9]     <u>See</u> <u>id.</u>

[10]    <u>See</u> <u>id.</u>

[11]    <u>See</u> <u>id.</u>

[12]    <u>Id.</u>

3

[Plaintiff] around [his] waist, spun [him] around and slammed [him] on [his] head."[13]   Defendant Hubenak "then started punching [Plaintiff] in [his] body and head and put his foot on [Plaintiff's] head and grinded [sic] it into the pavement."[14] Bystanders who observed the activity "yelled for [Defendant Hubenak] to stop[,]" and "he did."[15]

Defendant Hubenak instructed a security guard for Fiesta, Jose Izaguirre ("Izaguirre") to hold Plaintiff until other Houston Police Department ("HPD") officers arrived.[16]   Izaguirre put his foot on Plaintiff's back as soon as Defendant Hubenak removed his foot from Plaintiff's head.[17]   Defendant Hubenak joined Defendant Kelly in a foot pursuit of Brooks.[18]

While on the scene for a minimum of ninety minutes, Plaintiff was moved from one police vehicle to another.[19]   During that time, Plaintiff told Defendant Hubenak that he needed medical assistance to no avail.[20]   Defendant Hubenak led other [unnamed] officers over to Plaintiff to look at his face, and, although they "grimace[d]"

---

[13]   Id.

[14]   Id.

[15]   Id. p. 2.

[16]   See id.

[17]   See id.

[18]   See id.

[19]   See id.

[20]   See id.

when they saw it, none called an ambulance.[21]

Defendant Hubenak searched Plaintiff, removing his cell phone from a pocket and ultimately tossing it into Plaintiff's vehicle before it was towed, despite Plaintiff's request that the phone be transported with him to jail.[22]  Eventually, the cell phone was returned to Plaintiff in working order.[23]  Plaintiff also spoke with Defendant Hubenak about the drugs that were found in Plaintiff's vehicle and about Brooks' bag.[24]

Plaintiff was transported to the jail at which time he described Defendant Hubenak's actions to several officers in response to their comments about his facial injuries.[25]  A sergeant arrived and ordered Defendants Hubenak and Kelly to take Plaintiff to a hospital for treatment.[26]  After Defendants Hubenak and Kelly placed Plaintiff in their police vehicle, they spent thirty-five to forty minutes "talking and doing other stuff" before heading to the hospital.[27]

At the hospital, Defendant Hubenak stayed in the police

---

[21]    Id.

[22]    See id.

[23]    See Doc. 66-5, Ex. E to Def. Hubenak's Mot. for Summ. J., Dep. of Pl. pp. 55-56.

[24]    See Doc. 74-2, Ex. B to Pl.'s Resp. to Def. City's Mot. for Summ. J., Aff. of Plaintiff p. 2.

[25]    See id.

[26]    See id.

[27]    See id.

vehicle while Defendant Kelly escorted Plaintiff.[28]   Because
Defendant Kelly had not witnessed what happened to cause
Plaintiff's injuries, the treating physician asked to speak with
Defendant Hubenak.[29]   When Defendant Kelly contacted Defendant
Hubenak with the request, Defendant Hubenak refused to enter the
hospital.[30]

### 2. Defendant Hubenak's Account

On July 7, 2015, Defendant Hubenak observed Plaintiff's
vehicle fail to stop at a red light and turned around the police
vehicle to pursue Plaintiff.[31]   Also observing a defective right
brake light as Defendants Hubenak and Kelly followed Plaintiff,
they initiated a traffic stop.[32]

Plaintiff pulled into the Fiesta parking lot when Defendant
Hubenak observed the vehicle occupants "looking at [the] officers
through the back window while shifting their weight back and
forth."[33]  Plaintiff stopped the vehicle in front of the store, and,
as the officers approached, the occupants focused on Defendant

---

[28]     See id.

[29]     See id.

[30]     See id.

[31]     See Doc. 66-1, Ex. A-1 to Def. Hubenak's Mot. for Summ. J, Incident
Report No. 879346-15, Def. Hubenak's Narrative p. 4.

[32]     See id.

[33]     Id.

Hubenak.[34]  Defendant Hubenak approached on the driver's side of the vehicle and sensed "the distinct odor of fresh marijuana emanating from within the vehicle through the open windows."[35]  "As [the] officers reached the vehicle . . . Brooks moved a black garbage bag holding clear plastic bags containing marijuana visible inside from between the driver and passenger seat[s] to the passenger side floorboard."[36]

Defendant Hubenak "removed [Plaintiff] from the vehicle and immediately placed handcuffs on him."[37]  As the two of them "were standing in the open driver side door directly across from [Defendant Kelly and Brooks]," Defendant Hubenak began a search of Plaintiff and "suddenly became aware" that Defendant Kelly was struggling with Brooks on the other side of the car.[38]

Defendant Hubenak observed Brooks "lunging toward the open passenger side door" as Defendant Kelly attempted to prevent Brooks from reentering the vehicle.[39]  Brooks escaped Defendant Kelly's

---

[34]    See id.

[35]    Id.

[36]    Id.  At his deposition, Defendant Hubenak testified that he did not know at the time what it was that Brooks was moving.  See Doc. 66-4, Ex. D to Def. Hubenak's Mot. for Summ. J. p. 40.

[37]    Doc. 66-1, Ex. A-1 to Def. Hubenak's Mot. for Summ. J, Incident Report No. 879346-15, Def. Hubenak's Narrative p. 4.

[38]    Id.

[39]    Id.  In his deposition, Plaintiff testified Brooks never attempted to reach into the vehicle.  Doc. 75-3, Ex. C to Pl.'s Resp. to Def. Hubenak's Mot. for Summ. J. p 150.

grasp and "dove toward the passenger side floor board."[40]   Concerned

that Brooks may have been reaching for a weapon,[41] Defendant Hubenak

pushed Plaintiff away from the open driver side door out of the

line of Defendant Kelly's fire.[42]   Plaintiff suffered an abrasion

and swelling on his right cheek area.[43]

Defendant Hubenak went to assist Defendant Kelly and pursued

Brooks, who had escaped from Defendant Kelly and was running

through the parking lot.[44]   Brooks eventually stopped running and

lay on his back, refusing to turn over on his stomach in response

to Defendant Hubenak's verbal orders.[45]   Defendant Kelly arrived as

Defendant Hubenak was forcibly turning over Brooks and placing

handcuffs on him.[46]

While Defendants Hubenak and Kelly were in pursuit of Brooks,

Plaintiff "had attempted to stand and flee but was stopped by an

armed security guard employed by Fiesta."[47]   The marijuana from the

---

[40]     Doc. 66-1, Ex. A-1 to Def. Hubenak's Mot. for Summ. J, Incident
Report No. 879346-15, Def. Hubenak's Narrative pp. 4-5.

[41]     Defendant Hubenak admitted in his deposition that he did not see a
weapon within Brooks' reach and that Defendant Kelly had not drawn his weapon.
See Doc. 66-4, Ex. D to Def. Hubenak's Mot. for Summ. J. pp. 31-32.

[42]     See Doc. 66-1, Ex. A-1 to Def. Hubenak's Mot. for Summ. J, Incident
Report No. 879346-15, Def. Hubenak's Narrative p. 5.

[43]     See id.

[44]     See id.

[45]     See id.

[46]     See id.

[47]     Id.

vehicle was secured by another officer, and Plaintiff nodded his head when asked if he had known marijuana was in the vehicle.[48] Plaintiff's vehicle was towed from the scene.[49]  Defendant Hubenak contacted an assistant district attorney who accepted charges on Plaintiff and Brooks, and the two were transported to jail.[50]

"Brooks did not require medical treatment and was booked without incident[;] however, due to the abrasion and swelling to his face, [Plaintiff] was rejected by medical personnel."[51] Defendants Hubenak and Kelly transported Plaintiff to a hospital for treatment and released Plaintiff to the medical staff.[52] Defendant Hubenak completed a "To-Be" warrant on the drug charges at a later date.[53]

### 3.  Defendant Kelly's Account

On July 7, 2015, Defendant Kelly observed Plaintiff's vehicle fail to stop at a red light and turned around the police vehicle to pursue Plaintiff's vehicle.[54]  As Defendants Hubenak and Kelly followed Plaintiff, the officers also noticed that one of the

---

[48]     See id.

[49]     See id.

[50]     See id.

[51]     Id.

[52]     See id.

[53]     See id.

[54]     See Doc. 69-1, Ex. A to Defs. Kelly & Whitehead's Mot. for Summ. J., Aff. of Def. Kelly p. 1; Doc. 69-1, Ex. A-1 to Defs. Kelly & Whitehead's Mot. for Summ. J, Incident Report No. 879346-15, Def. Kelly's Narrative p. 1.

vehicle's brake lights was not functioning.[55]

After the vehicle stopped in the Fiesta parking lot, Defendant Kelly approached on the passenger side of the vehicle and "could smell a strong odor of marijuana" emanating from inside.[56] Defendant Kelly summoned Brooks out of the vehicle and moved him to the side of the vehicle.[57] After talking to Brooks and reviewing his ID, Defendant Kelly set Brooks' wallet and ID on the seat of the car in order to handcuff Brooks.[58]

Defendant Kelly described what happened next:

> When [Defendant Kelly] put the wallet and [Brooks'] ID back on the seat[, Brooks] reached back in the vehicle[,] and I grabbed both of his arms and attempted to pull them behind his back fearing that he was reaching for a weapon. [Defendant Kelly] pulled [Brooks] away from the vehicle.  The suspect continued to jerk away from [sic] [,] and eventually [Defendant Kelly] lost grip on [Brooks,] and [Brooks] evaded on foot north bound [sic] through the Fiesta parking lot . . . ."[59]

Defendant Kelly pursued Brooks, along with Defendant Hubenak.[60] After Defendant Hubenak apprehended Brooks, Defendant Kelly

---

[55]    Doc. 69-1, Ex. A-1 to Defs. Kelly & Whitehead's Mot. for Summ. J, Incident Report No. 879346-15, Def. Kelly's Narrative p. 1.

[56]    Id.; see also Doc. 69-1, Ex. A to Defs. Kelly & Whitehead's Mot. for Summ. J., Aff. of Def. Kelly p. 1.

[57]    Doc. 69-1, Ex. A-1 to Defs. Kelly & Whitehead's Mot. for Summ. J, Incident Report No. 879346-15, Def. Kelly's Narrative p. 1.

[58]    See id.

[59]    Id.

[60]    See id.

assisted in placing Brooks in handcuffs.[61]

### 4. Defendant Whitehead's Account

On July 7, 2015, Defendant Whitehead, a sergeant with the Southeast Gang Unit ("SGU"), responded to a call reporting a suspect evading SGU officers on foot.[62]

> Upon arrival to the scene, [Defendant Whitehead] observed . . . Plaintiff in handcuffs on the ground next to a security guard.  I noticed that Plaintiff had a minor contusion under his eye and[,] therefore, asked him if he needed medical attention.  Plaintiff declined medical attention at the scene.[63]

Defendant Whitehead placed Plaintiff in a police vehicle and conducted an on-scene investigation of use of force.[64]  In the course of the investigation, Defendant Whitehead spoke with both Defendants Hubenak and Kelly, attempted unsuccessfully to locate video of the incident, attempted unsuccessfully to locate witnesses.[65]  Plaintiff did not report any use of force to Defendant

---

[61]    See id.

[62]    See Doc. 69-2, Ex. B to Defs. Kelly & Whitehead's Mot. for Summ. J., Aff. of Def. Whitehead p. 1; Doc. 69-2, Ex. B-1 to Defs. Kelly & Whitehead's Mot. for Summ. J, Incident Report No. 879346-15, Def. Whitehead's Narrative p. 2.

[63]    Doc. 69-2, Ex. B to Defs. Kelly & Whitehead's Mot. for Summ. J., Aff. of Def. Whitehead pp. 1-2; see also Doc. 69-2, Ex. B-1 to Defs. Kelly & Whitehead's Mot. for Summ. J, Incident Report No. 879346-15, Def. Whitehead's Narrative p. 2.

[64]    See Doc. 69-2, Ex. B to Defs. Kelly & Whitehead's Mot. for Summ. J., Aff. of Def. Whitehead p. 2; Doc. 69-2, Ex. B-1 to Defs. Kelly & Whitehead's Mot. for Summ. J, Incident Report No. 879346-15, Def. Whitehead's Narrative p. 2.

[65]    See Doc. 69-2, Ex. B-1 to Defs. Kelly & Whitehead's Mot. for Summ. J, Incident Report No. 879346-15, Def. Whitehead's Narrative pp. 2-3.

Whitehead.[66]  Defendant Whitehead concluded "that the force used by [Defendant] Hubenak to push Plaintiff out of the way of potential danger was reasonable and necessary . . . and that the force used to effect the arrest of Brooks was reasonable and necessary."[67]

### 5. Security Guard's Account

Izaguirre was on duty patrolling the Fiesta parking lot by golf cart when he observed two HPD officers stop Plaintiff's vehicle.[68]  Izaguirre observed one of the officers handcuff Plaintiff and the other officer struggle with Brooks before Brooks ran away.[69]  According to Izaguirre, both officers gave chase, and Plaintiff attempted to run away while in handcuffs.[70]  At that point, Izaguirre pulled his golf cart into Plaintiff's path, "told [Plaintiff] to stay, and held him down on the pavement until the two officers returned with [Brooks]."[71]

Izaguirre affirmed that he did not place his foot on Plaintiff's head; nor did he observe anyone else do so.[72]  Izaguirre

---

[66]    See Doc. 69-2, Ex. B to Defs. Kelly & Whitehead's Mot. for Summ. J., Aff. of Def. Whitehead p. 2.

[67]    Id.; see also Doc. 69-2, Ex. B-1 to Defs. Kelly & Whitehead's Mot. for Summ. J, Incident Report No. 879346-15, Def. Whitehead's Narrative p. 3.

[68]    See Doc. 65-6, Ex. F to Def. City's Mot. for Summ. J., Aff. of Izaguirre p. 1.

[69]    See id.

[70]    See id.

[71]    Id. p. 2.

[72]    See id.

further testified that he did not observe injuries to Plaintiff's face, hear Plaintiff request medical care, observe anyone ridicule, or taunt Plaintiff, hear anyone yell at the police officers, or observe anyone punch, kick, or strike Plaintiff.[73]

## B. **Procedural Background**

On July 7, 2017, Plaintiff filed this action in the 165th Judicial District Court of Harris County.[74]  Plaintiff alleged that he was "violently beaten, harassed, taunted, wrongfully arrested and denied medical attention" as a result of a traffic stop where he was "not attempting to evade or resist arrest."[75]  Defendant Hubenak removed the suit to this court on August 16, 2017.[76]  On January 25, 2018, Plaintiff filed an amended complaint.[77]  Plaintiff filed a second amended complaint on February 22, 2018.[78]

From the lengthy, meandering, and repetitive amended complaint, the court discerns several constitutional claims and multiple theories of municipal liability.[79]  Against Defendants Hubenak, Kelly, and Whitehead ("Defendant Officers"), Plaintiff

---

[73]   See id.

[74]   See Doc. 1-4, Ex. D to Def. Hubenak's Not. of Removal, Pl.'s Compl. p. 1.

[75]   Id. pp. 1, 5.

[76]   See Doc. 1, Def. Hubenak's Not. of Removal.

[77]   See Doc. 26, Pl.'s 1st Am. Compl.

[78]   See Doc. 29, Pl.'s 2[d] Am. Compl.

[79]   See id. pp. 16-42.

alleged the use of excessive force during his arrest in violation
of the Fourth Amendment.[80]   In particular, Plaintiff complained of
excessive force:

> a)   when   [Defendant]   Hubenak   body slammed
>      Plaintiff [while handcuffed] on his head, neck
>      and face;
>
> b)   when [Defendant] Hubenak punched Plaintiff in
>      his face and body;
>
> c)   and when [Defendant] Hubenak kicked and placed
>      his boot on the face and head of Plaintiff;
>      and enlisting [sic] a private security guard
>      to place his boot on Plaintiff's head for a
>      period up to five minutes in violation of his
>      $4^{th}/14^{th}$ Amendment [r]ight to be [f]ree from
>      [e]xcessive [f]orce.[81]

Plaintiff recast the same excessive-force allegations under the
Fourteenth Amendment as violations of his right to be free from
excessive force as a pre-trial detainee and his right to
substantive due process.[82]   Plaintiff also alleged a violation of
his right to be free from unreasonable search and seizure under the
Fourth Amendment resulting from Defendant Hubenak's placing
Plaintiff's cell phone in the soon-to-be-towed vehicle.[83]   Lastly,
Plaintiff alleged a violation of his right to medical care after
having sustained injuries.[84]

---

[80]      See id. pp. 16-21.

[81]      Id. p. 17.

[82]      See id. pp. 21-27.

[83]      See id. pp. 35-36.

[84]      See id. pp. 36-39.

14

As against Defendant City, Plaintiff alleged that it is liable for the conduct of Defendant Officers due to its maintaining inadequate use-of-force policies that allowed for the widespread practice of "us[ing] body slams, feet and punching as . . . means of force without adequate guidance or written policy."[85]  Plaintiff also alleged inadequacies in other policies that, for example, allowed searches of individuals in open doors of unsearched vehicles and improper investigations into uses of force.[86]  In addition to inadequate policies and/or a failure to enforce policies, Plaintiff alleged deficiencies in policies or customs related to hiring, training, supervising, disciplining, and retaining officers and in ratifying illegal conduct.[87]

On August 15, 2018, the court entered a Memorandum and Recommendation addressing Defendant Kelly's Motion to Dismiss.[88] The court determined that Plaintiff's claim alleging wrongful seizure of his cell phone was not barred by his guilty plea for possession of marijuana under Heck v. Humphrey 517 U.S. 477 (1994).[89]  The court also determined that Plaintiff had stated a claim against Defendant Kelly for denial of medical treatment but

---

[85]    Id. p. 28; see also id. pp. 27-35.

[86]    See id. pp. 27-35, 39-42.

[87]    See id.

[88]    See Doc. 41, Mem. & Recom. Dated Aug. 15, 2018.

[89]    See id. pp. 8-11.

15

not for excessive force.[90]  Defendant Kelly timely objected to the
M&R,[91] and Plaintiff belatedly filed a response to Defendant Kelly's
Motion to Dismiss together with his response to Defendant Kelly's
objections.[92]  Therein, Plaintiff also requested leave to amend his
complaint "to identify, by name instead of reference, parties
responsible for Plaintiff's deprivation of rights."[93]

On September 17, 2018, the district judge adopted the M&R and
granted leave to amend for the limited purpose of identifying the
defendant(s) against whom each remaining cause of action was
alleged.[94]  The court ordered Plaintiff to file the amendment within
fourteen days of the date of the order.[95]  Plaintiff failed to file
an amended complaint within fourteen days but, about four months
after the missed deadline, filed a motion for leave to amend his
complaint to add "new material and relevant information."[96]  On
February 7, 2019, the court denied the motion as untimely and
without good cause.[97]

---

[90]     See id. pp. 11-14.

[91]     Doc. 44, Def. Kelly's Objs. to M&R.

[92]     Doc. 46, Pl.'s Resp. to Def. Kelly's Mot. to Dismiss & Def. Kelly's
Objections to the M&R & Req. for Leave to Am. Compl.

[93]     Id. p. 5.

[94]     See Doc. 47, Ord. Adopting M&R Dated Sept. 17, 2018.

[95]     See id. p. 2.

[96]     See Doc. 60, Pl.'s Mot. for Leave to File Am. Compl.

[97]     See Doc. 63, Ord. Dated Feb. 7, 2019.

Later that month, the parties unsuccessfully attempted mediation.[98]  Defendants timely filed the three pending motions for summary judgment at the end of February.[99]  On August 8, 2018, the court held a status conference, and the parties stated that, while they were continuing settlement discussions, they did not anticipate any resolution within the next few weeks.[100]  Thus, the court now addresses the pending motions for summary judgment.

## II.  Evidentiary Objections

A party must support its factual positions on summary judgment by citing to particular evidence in the record.  Fed. R. Civ. P. 56(c)(1).  Federal Rule of Civil Procedure 56(c)(2) allows a movant to object to exhibits that "cannot be presented in a form that would be admissible in evidence" under the Federal Rules of Evidence.  Only relevant evidence is admissible.  Fed. R. Evid. 402.  Relevant evidence has a "tendency to make a fact more or less probable than it would be without the evidence" and relates to a fact "of consequence in determining the action."  Fed. R. Evid. 401.  However, "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait."  Fed. R.

---

[98]    See Doc. 64, Jt. Alternative Dispute Resolution Report.

[99]    See Doc. 45, Ord. Dated Aug. 30, 2018; Doc. 65, Def. City's Mot. for Summ. J.; Doc. 66, Def. Hubenak's Mot. for Summ. J.; Doc. 69, Defs. Kelly & Whitehead's Mot. for Summ. J.

[100]    See Doc. 90, Min. Entry Ord. Dated Aug. 8, 2019; Audio of H'rg Dated Aug. 8, 2019.

Evid. 404.

Affidavits or declarations supporting summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Conclusory allegations, unsubstantiated assertions, improbable inferences, and speculation are not competent evidence. See Roach v. Allstate Indem. Co., 476 F. App'x 778, 780 (5th Cir. 2012)(unpublished)(citing S.E.C. v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1993)).

Hearsay is not admissible evidence. Fed. R. Evid. 802. Hearsay is a statement, not made while testifying in the current litigation, that is offered for "the truth of the matter asserted in the statement." Fed. R. Evid. 801. An exception to hearsay exists for records of a regularly conducted activity of a business. See Fed. R. Evid. 803(6).

The parties present five objections to evidence. Plaintiff objects to Izaguirre's affidavit on the basis that he did not describe his training and experience and he did not have personal knowledge of the force employed against Plaintiff. Izaguirre was the Fiesta security guard on the scene. His testimony is offered as an eye-witness account, not as an expert opinion. Accordingly, he is not entitled to testify about the reasonableness of Defendant Hubenak's use of force. However, Izaguirre is entitled to testify

about events that he witnessed.  In his affidavit, he asseverates that he personally witnessed the events as they transpired.  His account does not agree with Plaintiff's account; however, Plaintiff's objections go to the weight not the admissibility of Izaguirre's testimony.  Plaintiff's objection is **SUSTAINED IN PART AND OVERRULED IN PART.**

All Defendants object to Plaintiff's Statement of Facts in his response on the basis that it mischaracterizes the evidence. A brief is not evidence.  Defendants' objection is **OVERRULED.**

Without pointing to any particular statement in Plaintiff's affidavit, all Defendants object to it on the bases that it contains bare allegations of fact and conclusory statements and that statements therein are misleading.  Defendants' challenges suggest only disputes of fact.  The court has not relied on any inadmissible statement.  The objection to Plaintiff's affidavit is **OVERRULED.**

Defendant City objects to Plaintiff's discussion of a 2007 case in which Defendant Hubenak was a named but unserved defendant on the bases that Plaintiff mischaracterizes the lawsuit and that the case contains inadmissible character evidence.  Although Plaintiff did not attach the complaint as evidence in support of his response,[101] Plaintiff cites the complaint for the truth of the

---

[101]   Defendant City requests that the court take judicial notice of the filings in the case pursuant to Federal Rule of Evidence 201.  The court **GRANTS** that request.

allegations of excessive force against Defendant Hubenak.   No adjudication of the allegations against Defendant Hubenak occurred. The objection is **SUSTAINED.**

Defendant Hubenak objects to the document regarding his HPD employee complaint history on the bases that it contains irrelevant information, hearsay, and impermissible character evidence.   The document lists seventeen citizen complaints reported from May 2009 to January 2016, including six use-of-force complaints.   The information contained in the document is both temporally and substantively relevant.   The document is a business record of HPD kept in the course of its regularly conducted activity and falls therefore, within an exception to hearsay.   While it appears to lack proper authentication, that can be easily rectified by the testimony of the custodian or other qualified witness.   The document is not admissible to prove that Defendant Hubenak acted improperly during the incident at issue in this lawsuit, but it is admissible to show that multiple use-of-force and other complaints had been filed against Defendant Hubenak.   This objection is **SUSTAINED IN PART AND OVERRULED IN PART.**

### III.  Legal Standards

Procedural and substantive legal standards inform the court's resolution of the pending motions.

### A.  <u>Summary Judgment Standard</u>

Summary judgment is warranted when the evidence reveals that

no genuine dispute exists regarding any material fact and the
moving party is entitled to judgment as a matter of law. Fed. R.
Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986);
Stauffer v. Gearhart, 741 F.3d 574, 581 (5th Cir. 2014). A material
fact is a fact that is identified by applicable substantive law as
critical to the outcome of the suit. Anderson v. Liberty Lobby,
Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v.
Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001). To be
genuine, the dispute regarding a material fact must be supported by
evidence such that a reasonable jury could resolve the issue in
favor of either party. See Royal v. CCC & R Tres Arboles, L.L.C.,
736 F.3d 396, 400 (5th Cir. 2013)(quoting Anderson, 477 U.S. at
248).

The movant must inform the court of the basis for the summary
judgment motion and must point to relevant excerpts from pleadings,
depositions, answers to interrogatories, admissions, or affidavits
that demonstrate the absence of genuine factual issues. Celotex
Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th
Cir. 1992). The movant may meet this burden by demonstrating an
absence of evidence in support of one or more elements of the case
for which the nonmovant bears the burden of proof. See Celotex
Corp., 477 U.S. at 322; Exxon Corp. v. Oxxford Clothes, Inc., 109
F.3d 1070, 1074 (5th Cir. 1997). If the movant carries its burden,
the nonmovant may not rest on the allegations or denials in the

21

pleading but must respond with evidence showing a genuine factual dispute.  Stauffer, 741 F.3d at 581 (citing Hathaway v. Bazany, 507 F.3d 312, 319 (5ᵗʰ Cir. 2007)).  "The court need consider only the cited materials."  Fed. R. Civ. P. 56(c)(3).

## B.  Section 1983 and Constitutional Standards

In order to prevail on a claim under Section 1983,[102] a plaintiff must establish that the defendant deprived the plaintiff of his constitutional rights while acting under the color of state law.  Moody v. Farrell, 868 F.3d 348, 351 (5ᵗʰ Cir. 2017). Plaintiff pled violations of the following constitutional rights: (1) Fourth Amendment protection against excessive force;[103] (2) Fourteenth Amendment right to medical care; and (3) Fourth Amendment protection against unlawful seizure of Plaintiff's cell phone.

In order to establish an excessive-force claim under the Fourth Amendment, a plaintiff must show: (1) an injury; (2) that

---

[102]    The provision reads, in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

[103]    Although Plaintiff also pled excessive force under the Fourteenth Amendment, he waived that claim by failing to respond to the relevant parts of Defendants' motions for summary judgment.  See Keenan v. Tejeda, 290 F.3d 252, 262 (5ᵗʰ Cir. 2002)("an issue raised in the complaint but ignored at summary judgment may be deemed waived").  The latter claim should be dismissed against all Defendants.

"resulted directly from the use of excessive force;" and (3) "that the excessiveness of the force was unreasonable." Carnaby v. City of Houston, 636 F.3d 183, 187 (5th Cir. 2011)(citing Freeman v. Gore, 483 F.3d 404, 416 (5th Cir. 2007)). "The objective reasonableness of the force . . . depends on the facts and circumstances of the particular case, such that the need for force determines how much force is constitutionally permissible." Collier v. Montgomery, 569 F.3d 214, 218-19 (5th Cir. 2009)(quoting Bush v. Strain, 513 F.3d 492, 501 (5th Cir. 2008)). Reasonableness is "judged from the perspective of a reasonable officer on the scene," not in hindsight. Ramirez v. Knoulton, 542 F.3d 124, 128 (5th Cir. 2008).

Pretrial detainees have a Fourteenth Amendment due-process right to medical care. See Garza v. City of Donna, 922 F.3d 626 (5th Cir. 2019). With regard to medical care, an officer's "episodic act or omission" violates that right if he acts or fails to act with "subjective deliberate indifference to the detainee's rights." Jacobs v. W. Feliciana Sheriff's Dep't, 228 F.3d 388, 393 (5th Cir. 2000)(quoting Nerren v. Livingston Police Dep't, 86 F.3d 469, 473 (5th Cir. 1996)).

In addition to protecting individuals from a police officer's use of excessive force, the Fourth Amendment protects against unreasonable seizures of property. See Trent v. Wade, 776 F.3d 368, 377 (5th Cir. 2015)(quoting Fernandez v. California, 571 U.S.

292, 298 (2014)).  A warrantless seizure of evidence in plain view is reasonable when the officer is legally in the location from which he viewed the item seized and the "incriminating nature of the item [is] 'immediately apparent.'"  United States v. Turner, 839 F.3d 429, 433 (5ᵗʰ Cir. 2016)(quoting Horton v. California, 496 U.S. 128, 136 (1990)).

Government officials are entitled to qualified immunity from liability for civil damages "unless [(1)] the official violated a statutory or constitutional right [(2)] that was clearly established at the time of the challenged conduct."  Reichle v. Howards, 566 U.S. 658, 664 (2012).  Qualified immunity protects an officer even for reasonable mistakes in judgment.  See Ashcroft v. Al-Kidd, 563 U.S. 731, 743 (2011)("Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions."); Pearson v. Callahan, 555 U.S. 223, 231 (2009)("The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'")(quoting Groh v. Ramirez, 540 U.S. 551, 567 (2004)(dissenting opinion)).  By invoking qualified immunity, a defendant shifts the burden to the plaintiff to rebut the defendant's assertion.  Cantrell v. City of Murphy, 666 F.3d 911, 918 (5ᵗʰ Cir. 2012).

A city may be held liable under Section 1983 only for its own

24

illegal acts, not pursuant to a theory of vicarious liability. Connick v. Thompson, 563 U.S. 51, 60 (2011). To succeed on a claim under Section 1983, the plaintiff must demonstrate that an official policy promulgated by the municipal policymaker was the moving force behind the alleged constitutional violation. Peña v. City of Rio Grande City, 879 F.3d 613, 621 (5th Cir. 2018). Official municipal policy includes the "decisions of a government's law-makers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Id. at 621-22 (quoting Connick, 563 U.S. at 61). The burden on the plaintiff is to "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." Bennett v. City of Slidell, 728 F.2d 762, 767 (5th Cir. 1984).

### III. Analysis

The two motions filed by Defendant Officers challenge whether Plaintiff can overcome their assertion of qualified immunity. The court addresses those motions before addressing Defendant City's motion on municipal liability.

### A. __Defendant Officers' Motions__

Defendant Officers contend that they are entitled to qualified immunity on all of Plaintiff's claims. As a preliminary matter, none of Defendant Officers argues that he was not acting under the color of state law at the time of the challenged conduct.

Additionally, Defendant Officers cannot succeed on an argument that any of the allegedly violated constitutional protections were not clearly established at the time of the incident because the parameters of excessive force, failure to provide medical care, and unreasonable seizures as applied to the facts of this case were well developed areas of law on July 7, 2015.  See, e.g., Graham v. Connor, 490 U.S. 386, 392-99 (1989)(discussing law on use of force); Horton, 496 U.S. at 133-37 (discussing law on warrantless seizure of property); Hare v. City of Corinth, Miss., 74 F.3d 633, 647-48 (5th Cir. 1996)(discussing law on providing medical care). Thus, the only appropriate question for the court regarding each alleged constitutional violation is whether Plaintiff has produced sufficient evidence to create a fact issue as to whether any of the Defendant Officers violated any of Plaintiff's constitutional rights.

### 1.  Excessive Force

To succeed on this claim, Plaintiff must point to evidence suggesting that each Defendant Officer caused Plaintiff an injury that resulted from a use of force that was excessive and unreasonable.[104]

---

[104]    In his response briefs, Plaintiff states that he pled that Defendant Officers "used excessive force and/or deadly force."  See Doc. 75, Pl.'s Resp. to Def. City's Mot. for Summ. J. p. 19; Doc. 75, Pl.'s Resp. to Def. Hubenak's Mot. for Summ. J. p. 14; Doc. 76, Pl.'s Resp. to Defs. Kelly & Whitehead's Mot. for Summ. J. p. 10.  Without providing any legal reference, Plaintiff appears to view Defendant Hubenak's shoving Plaintiff to the ground as potentially deadly force.  The court finds that characterization to be a stretch.

Plaintiff's affidavit provides sufficient evidence that Defendant Hubenak shoved Plaintiff to the ground, punched Plaintiff in the body and head, and ground Plaintiff's head into the pavement with a foot. Furthermore, Plaintiff testified that Brooks never reached into the vehicle and that Plaintiff was complying with Defendant Hubenak's order to get down before he pushed Plaintiff. Defendant Hubenak's evidence raises questions as well, concerning whether he reasonably worried about a weapon on the passenger floorboard when he had observed Brooks' moving a bag of marijuana to that location and whether Defendant Hubenak was truly concerned about crossfire from Defendant Kelly when, as he admitted, he knew that Defendant Kelly had not drawn his weapon.

These facts call into question the reasonableness of Defendant Hubenak's belief that there was a significant threat to Plaintiff's safety that warranted shoving a handcuffed suspect to the ground. Should the jury resolve the factual disputes in Defendant Hubenak's favor, he may be entitled to qualified immunity even if he mistakenly assessed a risk of danger to Plaintiff's safety.

Moreover, assuming Plaintiff's account is true regarding the subsequent force used while Plaintiff was in handcuffs on the ground, no evidence suggests that such force was reasonable. Defendant Hubenak's defense is that those actions never took place. A jury will be required to decide whom to believe.

Summary judgment should not be granted on Plaintiff's

27

excessive force claim against Defendant Hubenak.

The court previously dismissed the excessive-force claim against Defendant Kelly. In response to Defendants Kelly and Whitehead's motion, Plaintiff states that he "pleads that [Defendant Whitehead] used excessive force and/or deadly force in the course of the officers' supposed arrest, and/or investigatory stop, and/or other 'seizure' of a free citizen, such as Plaintiff in violation of the Fourth Amendment and its 'reasonableness' standard."[105] Plaintiff fails to support his allegations with any evidence. In fact, the remainder of the two paragraphs Plaintiff devotes to excessive force discusses only Defendant Hubenak's conduct.[106]

Defendant Whitehead is entitled to summary judgment on the excessive force claim.

## 2. Failure to Provide Medical Care

To succeed on this claim, Plaintiff must point to evidence

---

[105]    Pl.'s Resp. to Defs.' Kelly & Whitehead's Mot. for Summ. J. p. 9. The court relies on the courtesy copy of this response. Docketed at entry number 76 as a response to Defendants Kelly and Whitehead's Motion for Summary Judgment is a document entitled "Plaintiff's Response to Defendant Hubenak's Motion for Summary Judgment" and contains the same "summary of argument" section as in Plaintiff's response to Defendant City's motion. See Doc. 76, Pl.'s Resp. to Def. Hubenak's Mot. for Summ. J. The docketed response appears to respond in other aspects to Defendants Kelly and Whitehead's Motion for Summary Judgment. See id.

[106]    The court does not read Plaintiff's complaint to allege a claim of supervisor liability against Defendant Whitehead. Regardless, the court agrees with Defendant Whitehead that a supervisor cannot be held liable on a theory of respondeat superior but only when his own conduct caused the violation or when, in failing to train or supervise, his actions amounted to deliberate indifference. See Estate of Davis ex rel. McCully v. City of N. Richland Hills, 406 F.3d 375, 381 (5th Cir. 2005).

that each of Defendant Officers acted with deliberate indifference to Plaintiff's right to medical care.

Plaintiff testified that Defendant Hubenak applied significant force against Plaintiff and again while he was handcuffed on the ground and, later, ignored Plaintiff's request for medical assistance. It is undisputed that an abrasion and swelling were visible on Plaintiff's right cheek, that Plaintiff was not booked at the jail due to his medical condition, and that Defendant Hubenak was one of the officers who transported Plaintiff to a hospital for treatment thirty to forty minutes after being instructed to do so.

These facts preclude the court from granting summary judgment on this claim against Defendant Hubenak. If Plaintiff's affidavit is taken as true, Defendant Hubenak knew exactly how much and the nature of the force he exerted on Plaintiff. Defendant Hubenak admitted that he saw the abrasion and swelling on Plaintiff's face. If Defendant Hubenak was not aware of the extent of Plaintiff's injury immediately, certainly he would have been alerted when Plaintiff requested medical care and when the jail medical staff opined that Plaintiff needed to go to the hospital. That evidence is sufficient to satisfy Plaintiff's burden of production that Defendant Hubenak was aware of facts leading to an inference of excessive risk to Plaintiff's health, that Defendant Hubenak drew that inference, and that Defendant Hubenak disregarded the risk.

Summary judgment should not be granted on Plaintiff's claim against Defendant Hubenak for failure to provide medical care.

As for Defendants Kelly and Whitehead, Plaintiff claims that they failed to summon medical assistance for Plaintiff despite his several requests.  The evidence does not indicate that Plaintiff specifically asked either of these two Defendants for medical care. In fact, Defendant Whitehead testified and included in his report that he asked Plaintiff if he needed medical attention, and Plaintiff declined.  No evidence places Defendant Kelly among the officers who even saw Plaintiff's injuries prior to transporting Plaintiff to jail.  The evidence does not support an inference that either of these officers possessed subjective knowledge of the extent of Plaintiff's injuries much less showed deliberate indifference to his needs.

Summary judgment should be granted on Plaintiff's claims against Defendants Kelly and Whitehead for failure to provide medical care.

### 3.  Unlawful Seizure of Plaintiff's Cell Phone

To succeed on this claim, Plaintiff must point to evidence that Defendant Hubenak's seizure of the cell phone was unreasonable.

The parties do not even agree that Defendant Hubenak took the cell phone from Plaintiff and tossed it into Plaintiff's vehicle prior to its being towed.  This alone is a genuine issue of

material fact to be resolved at trial.  Because Defendant Hubenak denies seizing the cell phone, he does not defend the its seizure as evidence of a crime or pursuant to any other constitutional justification.

Rather, Defendant Hubenak argues that, even if he did seize the cell phone, the deprivation did not rise to the level of a constitutional violation because the phone was returned to Plaintiff.  In making that argument, Defendant Hubenak relies on cases addressing procedural-due-process claims, not Fourth Amendment seizure claims.  Accordingly, the court finds that Defendant Hubenak fails to meet either of his burdens on summary judgment.  A dispute of fact exists, and Defendant Hubenak fails to demonstrate that he is entitled to judgment as a matter of law.

Summary judgment should not be granted on Plaintiff's claim against Defendant Hubenak for seizure of the cell phone.

Regarding Defendants Kelly and Whitehead, Plaintiff again relies solely on allegations in his live pleading.  Plaintiff contends that Defendants Kelly and Whitehead were present with an opportunity to prevent the seizure and did not.  Plaintiff points to no evidence in support of this allegation.

Defendants Kelly and Whitehead are entitled to summary judgment on the phone seizure claim.

## B.  **Defendant City's Motion**

Defendant City's motion boils down to the assertion that

Plaintiff cannot produce evidence to support his claims of municipal liability against Defendant City. Plaintiff responds, in significant part, by pointing to allegations in his live pleading. Therein, Plaintiff alleged that numerous policies and customs were moving forces behind the alleged constitutional violations. However, allegations no longer matter. At this stage, only evidence matters. Plaintiff fundamentally misunderstands his burden on summary judgment. The burden is on Plaintiff to cite the relevant materials that raise a fact issue on the existence of a policy or custom that unconstitutionally caused Plaintiff's injuries. With that burden in mind, the court looks for evidence cited by Plaintiff in support of the policies and customs addressed in his response.

Plaintiff's rambling and unfocused response to Defendant City's motion contains pages of allegations, argument, and hyperbole but infinitesimal actual evidence. Plaintiff listed nineteen exhibits in its response brief but docketed only ten of those with the response and cited only nine of the nineteen in the brief. Four of the nine exhibits cited by Plaintiff were not docketed with the response; and two other pieces of evidence are cited but not exhibited or attached. Despite all of those impediments to the consideration of Plaintiff's arguments regarding Defendant City's liability, the court has given consideration to whether Plaintiff has produced sufficient evidence of a policy to

survive summary judgment.

Plaintiff does not allege that any written policy is itself unconstitutional, only that Defendant Officers and others failed to consistently follow several different policies. Plaintiff's argument suggests, at most, a practice of violating various policies but does not point to evidence of repeated violations of the same policy in the same unconstitutional way. The failure to comply with Defendant City's policies alone does not give rise to constitutional relief against the officer, much less indicate that violations of policy amount to unconstitutional conduct so widespread as to implicate the municipality's acquiescence with a particular unconstitutional custom. Cf. Fraire v. City of Arlington, 957 F.2d 1268, 1276 (5th Cir. 1992) ("[E]ven a negligent departure from established police procedure does not necessarily signal violation of constitutional protections"). In other words, general noncompliance with policies is not enough, the evidence must suggest a particular unconstitutional custom. See Peña, 879 F.3d at 621-22.

Plaintiff's response brief quotes his complaint's allegations of three particular widespread customs: (1) Defendant City failed to properly investigate or discipline officers accused of using excessive force; (2) Defendant City failed to adequately train and supervise it officers; and (3) Defendant City tolerated a widespread practice of failing to provide medical care to suspects

33

injured by its employees.  Plaintiff cites no evidence in support of the third policy.

In Plaintiff's discussion of the first policy, Plaintiff relies heavily on the facts of this case as evidence of a policy. An inference of a policy of authorizing police misconduct is not warranted based on a single incident.  See Fraire, 957 F.2d at 1278.

However, where "reckless disregard for human life and safety [is] prevalent among the city's police officers[,] . . . threatens the life and security of those whom they encounter, and . . . is attributable to the instruction or example or acceptance of or by the city policymaker, the policy itself is a repudiation of constitutional rights."  Grandstaff v. City of Borger, Tex., 767 F.2d 161, 170 (5th Cir. 1985).  Thus, if Defendant City possesses an inadequate policy or custom of investigating and disciplining police officers who use excessive force, then that policy or custom could be the moving force behind the alleged unconstitutional use of excessive force by Defendant Hubenak.

All Plaintiff needs to produce is evidence.  Plaintiff cites to Defendant Hubenak's complaint history, which indicates that, in a period of nearly seven years, six use-of-force citizen complaints were filed against Defendant Hubenak.  Plaintiff discusses the internal investigations into five of those citizen complaints, asserting that the investigations were flawed.  Those five

34

complaints were not sustained upon investigation. Defendant Hubenak was exonerated on the sixth, most recent citizen complaint, which Plaintiff does not discuss. No possible interpretation of this evidence leads to an inference of widespread practices throughout the police force of excessive force, inadequate investigations of citizen complaints, or inadequate discipline.

The only other evidence cited in support of this alleged policy are a media news story and a academic article,[107] neither of which are attached to the response. Because Plaintiff did not provide these pieces of evidence, the court cannot determine their admissibility or significance. Plaintiff represents that the news story stated that Defendant City's statistics reflected the filing of 1,795 use-of-force complaints against HPD officers from 2005 through 2015. Of those complaints, according to Plaintiff's account of the news story, 98.44 percent of the investigations resulted in no finding against the officer.

Absent details of all of those incidents for comparison to the facts of the incident at issue in this case, the court cannot determine whether the news story's numbers are statistically significant and allow for an inference of a widespread unconstitutional practice.

Plaintiff's discussion of the second policy regarding training

---

[107] The court assumes from the information provided by Plaintiff these are a news story and an academic article.

cites the educational and training records of Defendant Officers[108] in support of this assertion: "Moreover, Defendants['] educational and training records are void of medical training or training or any indication that they were capable of diagnosing Moore's injuries."[109]   Plaintiff misses the mark here.   The law does not require that police officers be capable of diagnosing Moore's injuries, only that they do not act with subjective deliberate indifference to a detainee's needs. See Jacobs, 228 F.3d at 393.

Plaintiff presents argument without evidence to support his multitude of other alleged unconstitutional policies or customs.

Summary judgment should be granted on Plaintiff's claim of municipal liability.

## C.   **Punitive Damages Claims**

Defendant Hubenak's entire argument in support of summary judgment in his favor on punitive damages is:

> Here there is no evidence to support an award of punitive damages.  The record is void of evil motive or reckless or callous indifference to support punitive damages.  Eye witness Izaguirre describes the officers' conduct as reasonable, and the medical records fail to support any claim of punches and kicks.[110]

As Defendant Hubenak fails to cite any law, he has not shown that he is entitled to judgment as a matter of law on the punitive

---

[108]    The citation does not identify which exhibit contains their records, and the court could locate only Defendant Hubenak's.

[109]    Doc. 74, Pl.'s Resp. to Def. City's Mot. for Summ. J. p. 17.

[110]    Doc. 66, Def. Hubenak's Mot. for Summ. J. p. 13.

damages claim.

Regarding Defendants Kelly and Whitehead, the court has determined that Plaintiff failed to present facts in support of any claim against either of them.  Therefore, they cannot be assessed damages of any sort.

Finally, Plaintiff expressly abandoned his claim for punitive damages against Defendant City.[111]

### IV.  Conclusion

Based on the foregoing, the court **RECOMMENDS** that Defendant Hubenak's motion be **DENIED**, Defendants Kelly and Whitehead's motion be **GRANTED**, and Defendant City's motion be **GRANTED**.

If this Memorandum and Recommendation is adopted, the remaining claims are: (1) Fourth Amendment claim for excessive force against Defendant Hubenak; (2) Fourteenth Amendment claim for failure to provide medical care against Defendant Hubenak; and (3) Fourth Amendment claim for seizure of property against Defendant Hubenak.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.  Failure to file written objections within the time period

---

[111]  _See_ Doc. 74, Pl.'s Resp. to Def. City's Mot. for Summ. J. p. 28 ("To the extent punitive damages are barred by law, Plaintiff is not seeking punitive damages from Defendant City.").

mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.   Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 28th day of August, 2019.

Nancy K. Johnson
United States Magistrate Judge

38